Yeah, all right. Please be seated. Good afternoon. Next case on today's docket is the case of Henry D.B., a minor. And let me begin by saying that we're obviously missing a panel member. Justice Goldenherz had an illness today and wasn't able to be here. But he will have, of course, the oral tapes available and the briefs and the records. So he will be the third panel member. So we have, let's see, I've got the wrong case here. Ms. Heim, is that correct? Here we have the appellant and Chelsea Paston for the employee. You may begin, Ms. Heim. May I be of support? Yes. My name is Maggie Heim, and I am representing the minor, Dylan B. in this matter. Dylan pled guilty to two counts of criminal sexual assault, where he admitted to two counts of penetrating his younger sister when he was 14 years old. Forced, or in front of force, were alleged that the crime was criminal sexual assault, rather than criminal sexual abuse, because of the familial relationship between the villain and his sister. Now, in this appeal, we've raised two substantive due process challenges. The first is a challenge to how juvenile SORA, the juvenile SORA statute itself. And the second is an as-applied challenge to the imposition of sexual predator status, based on the circumstances of Dylan's case. So turning to the first issue, in Illinois, SORA is applied to juveniles based on the offense type alone. It's applied categorically. The juvenile judge has no discretion in the matter, and there is no evaluation of the risk of re-offense. And the only option for deviating from SORA comes after at least five years of registering. The test for substantive due process challenge is whether the statute represents a reasonable method of accomplishing the desired legislative goal. Now, in 2003, the Illinois Supreme Court rejected substantive due process challenge to an earlier, but very similar version to juvenile SORA. And in raising that view, the court held that there was a direct relationship between SORA registration and the protection of children under the juvenile version, as well as under the adult version. However, when applying a rational basis test, there are times when there's a change in the underlying circumstances which can result in a statute which was once founded on a rational basis losing that rational basis. And that's what's happened in this case, in an Illinois juvenile SORA statute. So we're asking that this court re-evaluate the current juvenile SORA statute, which is different, but re-evaluate it in light of the developments that have occurred in the 14 years since In Rej AW. Now, in recent years, the courts have repeatedly recognized that the juvenile rate is different. And this means that juveniles are less culpable for bad behavior, and they have greater prospects of reform. And some of this appeared in the In Rej AW case, although it's been reaffirmed again and again in recent years. But I think more importantly, in 2014, the Illinois Juvenile Justice Commission did an extensive study in looking at empirical data, speaking to practitioners, and reviewing the laws. And they found that the current juvenile SORA statute fails to enhance public safety. And it does this because it fails to recognize that juveniles don't typically re-offend in the way that adult sex offenders have been shown to re-offend. And requiring juveniles to register based on category of offense can stigmatize the minors and create actual hurdles to proper rehabilitation, such that you harm the communities, and you hurt the juvenile's ability to develop into a functioning member of society, such that public safety is harmed in the long term. Thus, we would ask this court to recognize that juvenile SORA, when applied so broadly, is having a perverse effect. It was intended to enhance public safety, and we have no doubt that that's a completely legitimate public goal. But we now have studies coming out saying, not only does it not enhance, but it seems to be impeding public safety. The court seems to intervene and say, it no longer has the rational basis that it once had. Alternatively, we would ask that this court find that the application of the label predator is unconstitutional as applied to Dylan. Now, Dylan was 14 years old when he engaged in sexual behavior with his sister, who was less than five years younger than him. As I already mentioned, there was neither force nor threat of force alleged, and in most cases, this would result in the label sex offender. However, in this case, the combination of juvenile SORA, the adult SORA definitions of sex offender and sexual predator, and the criminal sexual assault statute have led to Dylan being labeled a predator. This is a result which was not contemplated by the legislature, and as such, we're asking that this court find that this application of the predator label, and all that comes with it, is unconstitutional as applied. A statute can be found unconstitutional when it is applied contrary to its legislative purpose. In the briefs, we go through the Morris case, where the Supreme Court considered a statute which was aimed at preventing car thefts by making it a felony to alter vehicle registration. The court held that the statute was unconstitutional when it was applied to a car owner who had altered his own registration. This is because there could be no relationship between punishing a car owner altering his own registration and protecting the public from vehicle theft. Indeed, in that case, the statute was used to punish the very person that it was intended to protect. Here, we have numerous indications throughout the criminal code and in SORA, and we look at which offenses are defined as predator crimes. All these indications showing that the legislature has great interest in protecting children from predatory behavior. But you also have the legislature showing that they don't want minors swept into these more serious predatory offenses. I think the clearest example of that is when minors engage in sexual acts without any threat of force or force with someone who is within five years of them, then it's criminal sexual abuse, not criminal sexual assault. And that creates the difference between a sexual offender and a sexual predator, which means 10 years is triggered from registering rather than a lifetime of registration. And it also means that a criminal statute which stops child sex offenders and predators from going to public parks would not apply. In the case of the criminal sexual assault statute, it seems clear that saying that for a family member to engage in sexual encounter with a minor in their family, that's clearly aimed at protecting the minors from abusive behavior from adults in their family. But when you apply that same statute to the minor, suddenly when it combines with the definition of predator, you have potentially a consensual relationship between minors sharing the same household, related or not, who are now being defined as predators. I don't think that's an outcome that the legislature contemplated. The harm caused by this is very real. You have the stigma of being called a predator. The worst of the worst, not just a sex offender, but a predator. You have a default to lifetime registration. So even though there's the opportunity to get off the registry, that opportunity doesn't come for five years. The juvenile has to start it. You can have an attorney, but there's no appointed counsel at that point. And it would cost a lot of money, because you need to get an evaluation from a professional showing by a preponderance that you are at no risk of any re-offense. So to default to lifetime registration, to create this stigma, and to criminalize something so natural as being in a park, I think is clear evidence that absolutely, half those things come into play when you're talking about a predator. When you're talking about two siblings, where there's no evidence, and no allegation even, of threat of force or force. I think that's not what the legislature thought. I think this is just a bad combination of how these statutes work together. It was not recognized by the legislature. Does the court have any questions? I don't think so. Thank you. You'll have the opportunity for rebuttal. Ms. Caston? May I please perform the counsel, Chelsea Caston, on behalf of the state? Your honors, the automatic registration of juveniles under the Sex Offender Registration Act exists in the public interest to assist law enforcement and the protection of the public for juvenile sex offenders. It's well settled that there exists a rational relationship between the registration and the protection of the public. While one purpose of the Juvenile Court Act is to rehabilitate the minor, the General Assembly and the Illinois Supreme Court have both made it clear that the purpose and the policy, in addition to rehabilitation, is also to protect citizens from juvenile crime and to hold and teach juvenile offenders that they need to be accountable for their actions. The Illinois Juvenile Justice Commission was asked by the General Assembly in 2014 to research the state's responses to sexual offenders, or sexual offenses committed by youth. In response, they published a report in 2014. But since that time, neither the General Assembly or the Illinois Supreme Court have reacted to that, signaling that they were not persuaded by their report, they haven't come up with a better alternative to the existing system. And again, the Supreme Court has also refused to address the issue, which would signal that they still hold the Henry J.W. case in 2003 to be valid law, which is binding on this court. The Illinois Juvenile Justice Commission is not legal authority, it's not binding on the courts, it was just providing suggestions of how to improve the system. And where a party's objectives are essentially questions of policy, their work were really directed to the legislature than to the courts. Because as both the Illinois Supreme Court and the U.S. Supreme Court have found, although we exercise independent judgment on issues of constitutional law, the legislature is in a better position than the judiciary to gather and evaluate data bearing on complex problems. It's part of their jobs to look into those things. And so, to say that the automatic registration on the registry is not considering enough, or that it's too similar to the adult registry, it's too broad of a characterization. The system as it exists does allow for the termination, even for a juvenile who's supposed to register for life, he does have the ability to file to have it terminated. Although, as I understand the statute, he can't have it terminated if there's a finding of low risk. It has to be actually no risk, doesn't it? I'm not sure. Your Honor, I'd have to look into that. In this case, the minor was determined to be from a low to moderate risk of committing another sexual act, and he's at a high risk for violence in general. The minor has had a very tragic childhood. We're definitely not going to argue against that. However, the law is the law in this case. He preyed on his little sister. No, I'm not talking about the facts. The facts are pretty egregious. On both sides, they're sad. Very sad, Your Honor. On both sides, it's just sad. However, the law in this case is correct. And he needs to show that he's first entitled to termination, but he also needs to make an effort to help himself in this case, Your Honor. I believe you see in the record that the judge actually spoke to him about trying to make more of an effort to help himself. All the resources were being provided for him because he has to ultimately be the one to decide that he's the one to turn his life around. Again, Your Honor, the system, the registry as it exists, it does consider the fact that juveniles are different from adults. Not only are they able to petition for termination from the registry, but also their information is kept much more private. It's not online. It's essentially on a need-to-know basis that their information is given out. It's given to the schools, and then as it is deemed necessary by the police or their probation officer, other people will be told on a need-to-know basis. If it is terminated, then their names, their addresses, all identified information is completely erased from state and local registries. So I think that those are all indications that the law is aware of the fact that juveniles are different from adults. However, because of the additional purpose of needing to protect society, particularly where these juveniles are engaging in adult activities that are, well, they can be very heinous, it's necessary for the system to be put in place, which is what the Supreme Court has found and what has continued to be held to be valid law. Your Honors, in regards to the argument regarding the predator label, a party challenging the constitutionality of the statute has the burden of establishing its validity, and it's presumed to be constitutional. The label that he was given a predator only because of his relationship to the victim has no foundation or basis. The courts have applied the statute without claims that it cannot apply to a juvenile offender who has assaulted a sibling. There is no foundation to say that the statute does not apply to a sibling sexually assaulting another sibling. The minor in this case did not slip through a crack, and the issue is not whether or not he was abused. The issue is that the minor preyed on a little sister, on his little sister multiple times in the home, which is technically incest. The home is supposed to be a safe place. The safety was eliminated and taken away every time he assaulted her. And that's why he has the label of a predator, because of the very nature of sexually assaulting a sibling, and the statute was meant to apply to family members. And looking at the face of the statute, Your Honors, you'll see that the statute is pretty clear that they did intend for individuals under the age of 18 to be charged underneath the statute. Through word usage, and the fact that if you look at subsection B, it specifically references an individual charged under the age of 18 years old. So, I think at this time we have no questions. I don't think we have any further questions. Thank you, Your Honor. I ask that you please record your sentence. Thank you, Ms. Gaston. Ms. Hind? So, the state is correct that policy considerations are for the legislature to handle. But when the court is asked to review a policy consideration, a law that has been made which no longer has a reasonable relationship to the legislative goal, then we're talking about a constitutional question. That is not an appropriate place for the court to intervene. In this case, although the report was ordered, it went beyond simply saying there are better alternatives. It went so far as to say, not only does this not help public safety, it's hurting them. You have families that are being torn apart. You have juveniles who should be able to develop maturely within their society being stigmatized and held apart from it. You have all of these legal fees that are stacking up against the juveniles. And, Justice Chapman, to answer your question, you have to show by a preponderance that there is zero risk of re-offense in order to get off the registry under the juvenile statute. So, but presumably the legislature considered the report that they commissioned, and in essence you're asking us to ignore what they've determined for right or wrong, the results or the impact of that. I mean, do we have, I guess you're saying that we then can just ignore the legislator's response to that and dive into the constitutionality of it then? I think in this case where the legislature has received a report that pulled together evidence to show that their goal of public safety, which we agree is a legitimate legislative goal, is not being served but is in fact being undermined by this categorical imposition, then they are open to having the court say, you have to have a reasonable method of accomplishing your goal. And your method is not reasonable if it's undermining your very goal. So this is not a situation that comes up very often, but those were the results of the report. And is that clear-cut, the report? Yes. I mean, you know, it comes from empirical data. Previous studies, they review other states and they talk to practitioners. And the practitioners were saying that, Solorio wrote particularly, that it was impeding their ability to give effective treatment to their clients. And the report also goes through all the collateral consequences of dividing up families, creating hurdles to getting housing, to attending school, and just the stigma that comes along with it when you're putting it onto a juvenile is impeding their ability to avoid being a part of this criminal class. As to the second matter, I want to point out that we're not claiming that the criminal statute itself should never apply to minors. In this case, he pled guilty under that statute. It's the combination of the criminal sexual assault statute and the definition of predator. And counsel for the state pointed out that this was incest. And that's exactly our point. This was incest, which is a class 3 felony. It applies to siblings without regard to any age. And it is not one of the listed offenses for a sexual predator. And I think that's, to me, the clearest example of, it's a different situation where you're talking about family members where they're both minors. And the legislature in defining incest versus how they defined criminal sexual assault between older family members and how they defined criminal sexual abuse versus aggravated criminal sexual abuse, they're always showing that it's different when you're talking about two young people, close in age, who are experimenting with sex, perhaps, in a criminal way, but not in a predatory way. And the legislature wasn't intending to simply assume that this was predatory. So that's why we ask that this court say that the predatory label cannot be applied if we're following what the legislature intended. Are there any further questions? I don't think so. Thank you both for your briefs and your arguments. And we'll take the matter under advisement.